**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

OPERATING ENGINEERS' LOCAL 324
PENSION FUND, et al.,

                     Plaintiff,                    Case Number: 04-73052

v.                                         JUDGE PAUL D. BORMAN
                                         UNITED STATES DISTRICT COURT

MIDSTATES CONTRACTORS, L.L.C., et al.,

                     Defendants.
_____ /

**OPINION AND ORDER DENYING DEFENDANT PASEK'S MOTION**
**FOR SUMMARY JUDGMENT**

       Now before the Court is Defendant Robert Pasek's Motion for Summary Judgment.  The

Court held a motion hearing on April 5, 2006.  Having considered the entire record, and for the

reasons that follow, the Court DENIES Defendant Pasek's motion.

**I.**       **FACTS**

       Operating Engineers' Local 324 Pension Fund, Operating Engineers' Local 324 Health

Care Plan, Operating Engineers' Local 324 Vacation and Holiday Fund, Operating Engineers'

Local 324 Retiree Benefit Fund, Operating Engineers' Local 324 Apprenticeship Fund, and

Operating Engineers' Local 324 Defined Contribution Plan (hereinafter "Plaintiffs") are Trust

Funds.  (Second Am. Compl. ¶ 1).   Plaintiffs were established pursuant to the Labor

Management Relations Act, 29 U.S.C. § 186, and the Employee Retirement Income Security Act

of 1974, 29 U.S.C. § 1001 et seq.  (*Id*.).  Plaintiff's administrative offices are located in Novi,

Michigan.  (*Id*.).   Defendant Midstates Contractors, L.L.C. ("Midstates") is a Michigan

1

corporation with its principal place of business in Michigan. (*Id*. at ¶ 2). Defendant Robert Pasek ("Pasek") is an individual and principal owner of Midstates. (*Id*. at ¶ 3). Defendant Nick Piccirilli ("Piccirilli") is an individual and principal owner of Midstates. (*Id*. at ¶ 4). Defendant TBD Excavating LLC ("TBD") is a Michigan corporation with its principal place of business in Michigan. (*Id*. at ¶ 5). On August 28, 2002, Midstates entered into a Collective Bargaining Agreement where Plaintiffs are third-party beneficiaries. (*Id*. at ¶ 9; Pasek's Br. Ex. B, CBA). The Collective Bargaining Agreement was signed by Piccirilli as President of Midstates. (Pasek's Br. Ex. A, Pasek Dep. 31: 14-17). Under the terms of the Collective Bargaining Agreement, Midstates agreed to pay, in addition to wages, fringe benefit contribution to Plaintiffs for each employee at Midstates who is covered by the Collective Bargaining Agreement. (Second Am. Compl. ¶ 10).

Plaintiffs contend that fringe benefit contribution payments were to be made by Midstates no later than the fifteenth day of the month following the month in which the hours were worked. (*Id*. at ¶ 11). Plaintiffs claim that Defendants have failed to pay Midstates obligations under the Collective Bargaining Agreement, violating said agreement.

Plaintiffs filed their Complaint on August 10, 2004 and filed their First Amended Complaint on July 21, 2005. Pasek filed a Motion for Summary Judgment on January 30, 2006. Plaintiffs responded on February 10, 2006 and Pasek replied on February 20, 2006. Subsequent to the filing of the instant motion, Plaintiffs filed their Second Amended Complaint on February 24, 2006.

Pasek argues that he is not a fiduciary under ERISA. He contends that he did not run Midstates day to day operations, nor did he have control over finances and bill payments. Pasek

2

further argues that Piccirilli signed the Collective Bargaining Agreement and had final say over all matters, including the hiring and firing of employees.

Plaintiffs argue that Pasek was a ninety percent owner of Midstates. Plaintiffs contend that Pasek gained complete control of the company in late 2002 and had the obligation to ensure that payments were made to Plaintiffs in accordance with the Collective Bargaining Agreement at that time.

## II.     ANALYSIS

### A.     Standard

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.

3

1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted).  A dispute

over a material fact is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Conversely, where a reasonable jury could not find for the non-moving party, there is no genuine

issue of material fact for trial.  *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir.

1993).  In making this evaluation, the court must examine the evidence and draw all reasonable

inferences in favor of the non-moving party.  *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-

11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a

showing that is "sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial" will mandate the entry of summary

judgment.  *Celotex*, 477 U.S. at 322-23.  The non-moving party may not rest upon the mere

allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in

Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e).  The rule requires that non-moving party to introduce "evidence of

evidentiary quality" demonstrating the existence of a material fact.  *Bailey v. Floyd County Bd.

of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the

non-moving party must produce more than a scintilla of evidence to survive summary judgment).

### B.    Discussion

The sole issue before the Court on Pasek's Motion for Summary Judgment is whether

Pasek acted in an ERISA fiduciary capacity.   Under ERISA:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any
> discretionary authority or discretionary control respecting management of such

4

> plan or exercises any authority or control respecting management or disposition
> of its assets, (ii) he renders investment advice for a fee or other compensation,
> direct or indirect, with respect to any moneys or other property of such plan, or
> has any authority or responsibility to do so, or (iii) he has any discretionary
> authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).   The Sixth Circuit uses a functional test to decide fiduciary status.

*Briscoe v. Fine*, Case No. 05-5097, slip op. at 5(6th Cir. Apr. 13, 2006).  The threshold question

in cases alleging breach of ERISA fiduciary duty is "not whether the actions of some person

employed to provide services under a plan adversely affected a plan beneficiary's interest, but

whether that person was acting as a fiduciary. . . when taking the action subject to complaint."

*Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). "The term 'fiduciary' should be defined not only

by titles . . . but also by the authority one has or exercises over a plan."  *Best v. Cyrus*, 310 F.3d

932, 934 (6th Cir. 2002); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993).  Anyone

exercising authority over an employee benefit plan can be held as an ERISA "fiduciary" because

Congress intended the term to be interpreted broadly.  *Brock v. Hendershott*, 840 F.2d 339, 342

(6th Cir. 1988); *Seaway Food Town, Inc. v. Medical Mutual of Ohio*, 347 F.3d 610, 616 (6th Cir.

2003) ("The Supreme Court has recognized that ERISA 'defines "fiduciary" not in terms of

formal trusteeship, but in functional terms of control and authority over the plan . . . '").  The

conduct at issue must be examined "to determine whether it constitutes 'management' or

'administration' of the plan, giving rise to fiduciary concerns, or merely a business decision that

has an effect of an ERISA plan not subject to fiduciary standards."  *Seaway Food Town, Inc. v.

Medical Mutual of Ohio*, 347 F.3d 610, 617 (6th Cir. 2003) (citing *Hunter v. Caliber Sys., Inc.*,

220 F.3d 702, 718 (6th Cir. 2000); *Akers v. Palmer*, 71 F.3d 226, 231 (6th Cir. 1995) ("ERISA

does not require that day-to-day corporate business transactions, which may have a collateral

effect on prospective, contingent employee benefits, be performed solely in the interest of plan participants . . . . Only discretionary acts of plan management or administration, or those acts designed to carry out the very purposes of the plan, are subject to ERISA's fiduciary duties."). A fiduciary must use the skill, care, prudence and diligence of a prudent man. *Best*, 310 F.3d at 935.

"Fiduciary status is the key to unlocking ERISA's civil-enforcement scheme because the statute permits a suit 'by the Secretary of Labor, or by a participant, beneficiary or fiduciary for appropriate relief under 29 U.S.C. § 1109.' Section 1109, in turn, makes any person found to be a fiduciary personally liable to the ERISA-covered plan for any damages caused by that person's breach of fiduciary duties." *Briscoe*, slip op. at 5 (internal citations omitted).

Pasek argues that he is not named in the plan as a fiduciary, exercises no day to day control of Midstates, and has no control over finances and bill payments. Therefore, he asserts that he is not a "fiduciary" under ERISA. Pasek offers as proof of his assertion the Collective Bargaining Agreement, which is signed by Piccirilli, as well as a July 27, 2002 memo from Piccirilli on Midstates letterhead. In the memo, Piccirilli states that he is in full control of Midstates. (Pasek's Br. Ex. D, June 27, 2002 memo). The memo lists a number of responsibilities over which Piccirilli was in charge, including ensuring that payroll taxes are paid and coordinating accounts payable. (*Id.*). Pasek also offers an affidavit of Orlando Disanto, a Midstates Truck Maintenance Supervisor from July 2002 to June 2003. Disanto states that during his time at Midstates, Piccirilli ran the day-to-day operations and made company decisions, e.g., scheduling, work oversight and paying of the company's bills. (Pasek's Br. Ex. E, Disanto Aff.). The affidavit also mentions that Disanto took all of his direction from

6

Piccirilli.  (*Id*.).

Additionally, Pasek testified in his own deposition that he did not get involved in any physical work at Midstates until August or September of 2003.  (Pasek Br. Ex. A, Pasek Dep. 14: 7-16; 27: 4-14).  Pasek asserted that he was not aware that Midstates signed the Collective Bargaining Agreement until weeks after it was signed.  (Pasek Br. Ex. A, Pasek Dep. 31: 8-17).

Plaintiffs contend that the money owed to them is considered "plan assets" - an issue not contested by Pasek.  However, Plaintiffs  contend that Pasek acted in a fiduciary capacity. Plaintiffs support this contention by alleging that Pasek is a ninety percent owner of Midstates, that Midstates' assets were purchased from a company that Pasek previously owned, and that Midstates' assets were eventually sold to a company Pasek owns.  More importantly, Plaintiffs offer Piccirilli's deposition testimony that in December 2002 - a year before Pasek claims he took over duties - Pasek took control over who was to be paid at Midstates.[1]  (Pls.' Resp. Ex. A, Piccirilli Dep. 23: 17-20).  Piccirilli also testified that he and Pasek would consult with each other.  (Pasek Reply Ex. A, Piccirilli Dep. 21: 5-15).

To survive summary judgment, the party who opposes the motion must present significant probative evidence, evidence which is not "merely colorable."  *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).  In the instant motion, the Court is not asked to decide whether there is a genuine issue of material fact that Pasek breached his fiduciary duty, but whether Pasek performed any actions that can be construed as discretionary.  The evidence submitted by both parties reveals a genuine issue of material fact as to whether Pasek had

---

[1] Piccirilli also gives conflicting testimony in his deposition by stating that Pasek took control in mid to late 2003.  (Pasek Reply Ex. A, Piccirilli Dep. 33: -23).

discretionary authority or discretionary control in the Fall of 2002.

Piccirilli testifies that he was not in complete control of day to day operations after December 2002 and that Pasek was in control of operations. This is contrary to Pasek's testimony, Piccirilli's July 2002 memo, and Disanto's testimony.

Midstates' assets were purchased from R & D Contracting, a company owned by Pasek and sold after Midstates' bankruptcy to TBD Excavating. TBD Excavating is owned by Pasek. Further, Pasek gave approval for the company to purchase a stamp of Pasek's signature because his signature was required on Midstates' checks. (Pasek Br. Ex. A, Pasek Dep. 16, 17). Additionally, Piccirilli's memo offered by Pasek states that "[Piccirilli] will also coordinate and update Bob Pasek daily in regards to all aspects of the company." (Pasek Br. Ex. A, Piccirilli Memo).

In a light most favorable to Plaintiffs, the evidence presented raises a question of Pasek's level of involvement, leaving a genuine issue of material fact whether Pasek acted in a fiduciary capacity under ERISA. Accordingly, the Court DENIES Pasek's Motion for Summary Judgment.

## III.    CONCLUSION

For the reasons stated, the Court DENIES Pasek's Motion for Summary Judgment.

**SO ORDERED.**

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  April 17, 2006

CERTIFICATE OF SERVICE
Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 17, 2006.

S/Jonie Parker
Case Manager