## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

OPERATING ENGINEERS' LOCAL 324
PENSION FUND, et al.,

                    Plaintiff,                Case Number: 04-73052

v.                                      JUDGE PAUL D. BORMAN
                                      UNITED STATES DISTRICT COURT

MIDSTATES CONTRACTORS, L.L.C., et al.,

                    Defendants.
_____ /

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (DOCK. NO. 51)

Now before the Court is Plaintiffs' Motion for Summary Judgment. The Court held a motion hearing on January 31, 2007. Having considered the entire record, and for the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion.

**I.     FACTS**

Operating Engineers' Local 324 Pension Fund, Operating Engineers' Local 324 Health Care Plan, Operating Engineers' Local 324 Vacation and Holiday Fund, Operating Engineers' Local 324 Retiree Benefit Fund, Operating Engineers' Local 324 Apprenticeship Fund, and Operating Engineers' Local 324 Defined Contribution Plan (collectively "Plaintiffs") are Trust Funds. (Second Am. Compl. ¶ 1). Plaintiffs were established pursuant to the Labor Management Relations Act, 29 U.S.C. § 186, and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (*Id*.). Plaintiffs' administrative offices are located in Novi, Michigan. (*Id*.).

Defendant Midstates Contractors, L.L.C. ("Midstates"), a sewer and excavating company, is a Michigan corporation with its principal place of business in Michigan. (*Id*. at ¶ 2; Pls.' Br. Ex. A, Pasek Dep. 6). Defendant Robert Pasek ("Pasek") is an individual and principal owner of Midstates. (*Id*. at ¶ 3). Defendant Nick Piccirilli ("Piccirilli") is an individual and principal owner of Midstates. (*Id*. at ¶ 4). Defendant TBD Excavating LLC ("TBD") is a Michigan corporation with its principal place of business in Michigan. (*Id*. at ¶ 5).

Midstates was formed sometime in June 2002. (Pls.' Br. Ex. A, Pasek Dep. 6). On June 27, 2002, Piccirilli took full control of the company. (Pls.' Br. Ex. D, Piccirilli Statement). In a signed statement, Piccirilli wrote:

> I[,] Nicola Piccirilli[,] will be in control of Mid State Contractor's LLC. This will include but not be limited to: Internally – preparing job estimates, coordinate cash flow with bookkeeper, ensure payroll taxes are paid and coordinate accounts payable and purchases for job materials.
>
> Externally I will be responsible for: coordinating field supervisor work for the day and updates on progress reports, tracking of job estimates versus actual cost, field inspections, project management responsibilities in each job, identify and pursue new work. I will also coordinate and update Bob Pasek daily in regards to all aspects of the company. I am taking full control of the company[.]

(*Id*.). On August 28, 2002, Midstates entered into a Collective Bargaining Agreement where Plaintiffs are third-party beneficiaries. (Compl. ¶ 9). The Collective Bargaining Agreement was signed by Piccirilli as President of Midstates. (Pls.' Br. Ex. E, Contract Signature Page). Under the terms of the Collective Bargaining Agreement, Midstates agreed to pay, in addition to wages, fringe benefit contribution to Plaintiffs for each employee at Midstates who is covered by the Collective Bargaining Agreement. (Second Am. Compl. ¶ 10).

Midstates ceased operation in August or September 2003 due to operating at a loss. (Pls.' Br. Ex. A, Pasek Dep. 6). Around the same time, Pasek began handling paperwork, making

2

payments on the equipment that were due to the bank, and picking up the mail. (Pls.' Br. Ex. A., Pasek Dep. 27).

Plaintiffs contend that fringe benefit contribution payments were to be made by Midstates no later than the fifteenth day of the month following the month in which the hours were worked. (*Id*. at ¶ 11). Plaintiffs allege that Defendants violated said agreement by failing to pay Midstates obligations under the Collective Bargaining Agreement.

In the First Amendment to the Operating Engineers' Local 324 Pension Fund Amended and Restated Agreement and Declaration of Trust states that

> the term "Employer Contributions" or "Contributions" as used herein shall mean the payment made or required to be made by the Trust Fund by a Contributing Employer. Contributions **become vested Plan assets** at the time they become due and owing to the Fund. An Employer shall have no right, title or interest in the Contributions owing to or made to the Fund. Title to all Contributions paid into and/or due and owing the Fund shall be vested in and remain exclusively in the Trustees of the Fund.

(Pls.' Br. Ex. J, First Amendment to the Operating Engineers' Local 324 Pension Fund Amended and Restated Agreement and Declaration of Trust) (emphasis added).

An audit conducted by Plaintiffs, concluded on November 15, 2004, found that Defendant Midstates owed a balance of $43,747.86 in unpaid contributions. (Pls.' Br. Ex. G, 11/14/04 Audit Report; Pls.' Br. Ex. E, Contract Signature Page).

Plaintiffs filed their Second Amended Complaint on February 24, 2006. On April 7, 2006, the Court granted Plaintiffs' Motion for Summary Judgment against Midstates as to liability only, pending discussions between the parties. (Dock. No. 44). On April 17, 2006, the Court denied Defendant Pasek's Motion for Summary Judgment. *Local 324 v. Midstates Contractors*, 2006 WL 1007513 (E.D. Mich. Apr. 16, 2006) (unpublished).

3

Plaintiffs filed their Motion for Summary Judgment against Defendant Pasek on October 31, 2006. (Dock. No. 51). Defendant Pasek filed his Response on November 22, 2006. (Dock. No. 53). Plaintiffs filed their Reply on December 18, 2006. (Dock. No. 54).

## II.   ANALYSIS

### A.   Standard

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

4

Conversely, where a reasonable jury could not find for the non-moving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

## B. Discussion

As in Defendant Pasek's Motion for Summary Judgment, the issue before the Court is whether Pasek acted in an ERISA fiduciary capacity. In denying Pasek's Motion for Summary Judgment, the Court ruled that "[i]n a light most favorable to Plaintiffs, the evidence presented raises a question of Pasek's level of involvement, leaving a genuine issue of material fact whether Pasek acted in a fiduciary capacity under ERISA." *Local 324*, 2006 WL 1007513, at *5. Now the Court is asked to decide whether Pasek, when viewing the facts in a light most

favorable to him, acted in a fiduciary capacity under ERISA.

In order to determine whether Pasek acted as an ERISA fiduciary, the Court must first determine: (1) whether unpaid benefit contributions are plan assets; and (2) whether Pasek exercised discretionary control or authority over such assets. *Iron Workers' Local No. 25 Pension Fund v. McGuire Steel Erection, Inc*., 352 F. Supp. 2d 794, 805 (E.D. Mich. 2004). Pasek does not dispute whether the unpaid benefit contributions are plan assets.

    1.      Whether Unpaid Benefit Contributions are Plan Assets

Regarding unpaid benefits contributions,

> [t]he Sixth Circuit has yet to consider when unpaid benefit contributions become plan assets. Courts in the Third Circuit hold that benefit contributions become plan assets at the moment they are due, so long as the parties have agreed that contributions become plan assets when due. Other courts, however, hold that unpaid benefit contributions become plan assets when the contributions become due, regardless of the language of the benefit plan.

*Local No. 25 Pension Fund*., 352 F. Supp. 2d at 805.   Thus, using either the Third Circuit approach, or the approach taken by other courts, the unpaid contributions became vested plan assets when they became due.  According to the Operating Engineers' Local 324 Pension Fund Amended and Restated Agreement and Declaration of Trust, *supra*, the contributions become plan assets at the time they become due and are owed to the Fund.  Further, the Trust Agreement states that "an Employer shall have no right, title or interest in the Contributions owing to or made to the Fund."  (Pls.' Br. Ex. F).  Accordingly, the Court finds that the unpaid benefit funds are plan assets.

    2.      Whether Pasek Exercised Discretionary Control or Authority assets

Next, the Court turns to whether Pasek acted in a fiduciary capacity with respect to the plan assets.  Under ERISA:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).   The Sixth Circuit uses a functional test to decide fiduciary status. *Briscoe v. Fine*, 444 F.3d 478, 486 (6th Cir. 2006).  The threshold question in cases alleging breach of ERISA fiduciary duty is "not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary. . . when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). "The term 'fiduciary' should be defined not only by titles . . . but also by the authority one has or exercises over a plan." *Best v. Cyrus*, 310 F.3d 932, 934 (6th Cir. 2002); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993).  Anyone exercising authority over an employee benefit plan can be held as an ERISA "fiduciary" because Congress intended the term to be interpreted broadly.  *Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir. 1988); *Seaway Food Town, Inc. v. Medical Mut. of Ohio*, 347 F.3d 610, 616 (6th Cir. 2003) ("The Supreme Court has recognized that ERISA 'defines "fiduciary" not in terms of formal trusteeship, but in functional terms of control and authority over the plan . . . '").

The conduct at issue must be examined "to determine whether it constitutes 'management' or 'administration' of the plan, giving rise to fiduciary concerns, or merely a business decision that has an effect of an ERISA plan not subject to fiduciary standards." *Seaway Food Town, Inc.*, 347 F.3d at 617 (citation omitted); *Akers v. Palmer*, 71 F.3d 226, 231 (6th Cir. 1995) ("ERISA does not require that day-to-day corporate business transactions, which

may have a collateral effect on prospective, contingent employee benefits, be performed solely in

the interest of plan participants . . . . Only discretionary acts of plan management or

administration, or those acts designed to carry out the very purposes of the plan, are subject to

ERISA's fiduciary duties.").  A fiduciary must use the skill, care, prudence and diligence of a

prudent man.  *Best*, 310 F.3d at 935.

> Fiduciary status is the key to unlocking ERISA's civil-enforcement scheme
> because the statute permits a suit by the Secretary of Labor, or by a participant,
> beneficiary or fiduciary for appropriate relief under 29 U.S.C. § 1109.  Section
> 1109, in turn, makes any person found to be a fiduciary personally liable to the
> ERISA-covered plan for any damages caused by that person's breach of fiduciary
> duties.

*Briscoe*, 444 F.3d at 486 (internal citations omitted).

Pasek plainly argues that he was not a fiduciary because he did not exercise decision-

making authority over the assets of the plan.  In asserting that he is not a fiduciary, Pasek argues

that he exercised no day-to-day control of Midstates.  Pasek testified that he did not get involved

in any physical work at Midstates until August or September of 2003.  (Def.'s Resp. Ex. A,

Pasek Dep. 14, 27).  Pasek cites Plaintiffs' January 16, 2006 Motion for Summary Judgment

which concedes that Piccirilli was "the individual responsible for the daily operations of the

company.  All individuals working of the company reported to him, and . . . [i]t is undisputed

that Nick Piccirilli had the final say over all matters including the hiring and firing of

employees." (Dock. No. 30, Pls.' Mot. Summ. J. ¶ 2, 1/16/06).  Pasek argues that the cases cited

by Plaintiffs do not support Plaintiffs' position that he has individual liability in this case.  Pasek

also argues that even if the Court finds that he acted in a fiduciary capacity, the breach took

place before he was a fiduciary.  Additionally, Pasek offers an affidavit of Orlando Disanto, who

was employed at Midstates as a Truck Maintenance Supervisor.  (Def.'s Resp. Ex. H, Disanto

8

Aff. ¶¶ 2, 3).  Disanto states that during his time at Midstates, Piccirilli ran the day-to-day operations and made company decisions, e.g., scheduling, work oversight, and paying of the company's bills. (*Id*.).  The affidavit also mentions that Disanto took all of his direction from Piccirilli from July 2002 until June 2003, when his employment with Midstates ended.  (*Id*.).  Pasek contends that he was not a fiduciary at any time when Midstates was an operating company.  Pasek submits that there were no union employees at Midstates after March 2003, so no new breach of fiduciary duty could have occurred for failure to pay union benefits.

Plaintiffs argue that Pasek is personally liable for the unpaid employee benefits.  In support of their assertion that Pasek is a fiduciary, Plaintiffs present evidence that Pasek is a ninety-percent owner of Midstates (Pls.' Br. Ex. A. Pasek Dep. 6), that Midstates' assets were purchased from R & D Excavating, a company that Pasek previously owned, (Pls.' Br. Ex. A, Pasek Dep. 39), and that Midstates' assets were eventually sold to Defendant TBD Excavating, a company Pasek owns.  (Pls.' Br. Ex. C, Pasek Dep. 49, 58).  Plaintiffs maintain that Pasek was involved in Midstates operations from, at the very least, August 2003 to November 2004.  (Pls.' Br. 1).  Plaintiffs offer Pasek's testimony that he knew Midstates was not paying employee benefits contributions as early as December 2002.  (Pls.' Br. Ex. A, Pasek Dep. 34).  Plaintiffs aver that just because Pasek did not make the day-to-day decisions to pay one debt instead of another does not mean that he cannot be held accountable for breach of fiduciary duties.

To survive summary judgment, the party who opposes the motion must present significant probative evidence, evidence which is not "merely colorable."  *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).  Therefore, the Court looks to whether Pasek's actions amounted to exercising authority over the employee benefit plan prior to August 2003,

and from August 2003 to November 2004.

i.      Prior to August 2003

Certainly, the sole fact that Defendant was a ninety-percent shareholder does not show an exercise of authority over a plan.  Nor does Pasek's theoretical "ability" to monitor the operations on a day-to-day basis.  While Plaintiffs proffer the fact that Pasek knew Plaintiffs were not being paid as early as December 2002, the Court finds that his knowledge does not make him a fiduciary.  At the time, Piccirilli was in control of the day-to-day activities.  Therefore, Pasek's knowledge of Midstates failure to pay does not suddenly transform him into a fiduciary.  In a light most favorable to Pasek, he was not a named fiduciary, nor was he in control of the finances prior to August 2003.  Additionally, while Plaintiffs argue that a stamp was made with Pasek's signature, the fact that a stamp was made showed that Pasek was removed from the check writing.  Only two signature were needed on checks.  Thus, Pasek's signature was not required on every check because Piccirilli and Midstates' bookkeeper also had check signing power.

The Court only looks at whether Pasek exercised discretionary control or authority over the assets.  Accordingly, the Court holds that Pasek did not have such control prior to August 2003.

ii.      August 2003 to November 2004

Plaintiffs highlight two issues to show that Pasek was a fiduciary: (1) that Pasek paid off the equipment loan between August 2003 and November 2004; and (2) that Midstates received $93,419.50 from August 2003 through November 2003.  (Pls.' Br. Ex. I).

Pasek admits that he was making payments on the equipment loan beginning March 2003

until November 2004.  (Pls.' Br. Ex. B, Pasek Dep. 25, 26).  However, Pasek testified that he made these payments himself, directly to the bank.  (Pls.' Br. Ex. C, Pasek Dep. 52).  According to him, Midstates never made a payment to the bank because Midstates never had the funds. (*Id.*).  Since the funds were Pasek's, and not assets of Midstates, it is difficult for this Court to tie his payments to discretionary authority over anything related to the fund.  Accordingly, the Court finds that Pasek's payments do not make him a fiduciary.

Regarding the accounts receivable money, if Midstates received accounts receivable money during the applicable time period – and Pasek had access to it and did not pay any of the employee benefits –  than even in a light most favorable to Pasek, he exercised discretionary control over the assets.  Pasek rebuts Plaintiffs' assertion by proffering that

> the documents submitted by Plaintiff claiming that Midstates had receivables after June 2003 are just plain wrong.  Midstates did supply these documents in response to a discovery request, but these records do not reflect what actually took place at that time.  The bank statements, which have also been given to Plaintiffs, tell the true story of Midstates – that it didn't make any money and that by June 2003 the bank accounts were closed.

(Def.'s Resp. 4).

In reviewing the bank statements of Midstates' two checking accounts, provided by Pasek in his Response, the Court notes that by the end of June 2003, one account had a balance of less than $100.00 and the other account had a negative balance.  (Pls.' Resp. Ex. G, Bank Statements).  However, Pasek failed to submit any proof to show that the bank accounts were indeed closed by the end of June 2003; nor did he submit evidence to support his assertion that the documents he provided to Plaintiffs, showing a large amount of receivables received beginning August 2003, was not accurate.  Defendants provided the documents relied on by Plaintiffs as part of a discovery request, and the Court has no reason to doubt their veracity.

11

In a light most favorable to Pasek, the evidence presented in the pleadings does not create a genuine issue of material fact whether Pasek acted in a fiduciary capacity under ERISA from August 2003 to November 2004. Accordingly, the Court finds that Pasek had discretionary control over Midstates assets and breached his fiduciary duty to Plaintiffs by failing to apply the money to them. Collecting monies for covered work and failing to make fringe benefit payment for that work subjects Pasek to liability, even if the work actually occurred before he took over.

## III.   CONCLUSION

For the reasons stated above, the Court:

(1)     **GRANTS** Plaintiffs' Motion for Summary Judgment as to the time period of August 2003 to November 2004; and

(2)     **DENIES** Plaintiffs' Motion for Summary Judgment as to the time period prior to August 2003.


**SO ORDERED.**


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  February 13, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on February 13, 2007.


s/Denise Goodine
Case Manager